# United States Court of Appeals for the Federal Circuit

2008-7078

IRVIN J. EDWARDS,

Claimant-Appellant,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellee.

James R. Barney, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., of Washington, DC, argued for claimant-appellant. With him on the brief was Elizabeth D. Ferrill. Mark R. Lippman, The Veterans Law Group, of LaJolla, California, for claimant-appellant.

Tara K. Hogan, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With her on the brief were Jeanne E. Davidson, Director, and Martin F. Hockey, Jr., Assistant Director. Of counsel on the brief was Michael J. Timinski, Deputy Assistant General Counsel, Office of the General Counsel, United States Department of Veterans Affairs, of Washington, DC.

Appealed from: United States Court of Appeals for Veterans Claims

Judge Alan G. Lance, Sr.

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

2008-7078

IRVIN J. EDWARDS,

Claimant-Appellant,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellee.

Appeal from the United States Court of Appeals for Veterans Claims in 04-1104, Judge Alan G. Lance, Sr.

_____

DECIDED: September 24, 2009

_____

Before RADER, BRYSON, and DYK, <u>Circuit Judges</u>.

Opinion for the court filed by <u>Circuit Judge</u> RADER. Additional views filed by <u>Circuit Judge</u> RADER.

RADER, <u>Circuit Judge</u>.

The United States Court of Appeals for Veterans Claims (the "Veterans Court") rejected Irvin K. Edwards's claim for an earlier-effective date for entitlement to benefits. <u>Edwards v. Peake</u>, 22 Vet. App. 29 (2008). In reaching that decision, the Veterans Court affirmed a ruling by the Board of Veterans' Appeals (the "Board") that Mr. Edwards had received adequate notice of an earlier denial of his claim. Because the Veterans Court gave Mr. Edwards adequate notice, this court affirms.

I.

Mr. Edwards began service on active duty in October 1977. In February 1978, a private hospital diagnosed Mr. Edwards with a "[p]sychotic break either due to: (1) schizophrenia or (2) psychotic depression." Over the next two months, Mr. Edwards remained in the hospital for psychiatric evaluation. The chief of the neuropsychiatric department summarized his condition:

> SUMMARY OF MENTAL STATUS EXAMINATION: Suggested adult situational reaction of psychotic proportions, however, the possibility of a schizophrenic disorder was clearly evident.
>
> . . . .
>
> While a patient at this facility he was treated on an open Medical Surgical Ward and was not a management problem. He was administered Thorazine 25 mg three times daily which resulted in the prompt resolution of his symptoms. . . . At this time, the patient has achieved the maximum benefit of hospitalization and he is to be discharged to full duty.

At a second evaluation, his treating clinical psychologist added:

> Recommendations: PVT EDWARDS has a significant personality disorder but is responsible for his behavior. He does have a long standing duly diagnosed personality disorder whose military adaptability will not benefit from psychiatric treatment including hospitalization. This disorder is of such severity as to render the member incapable of serving adequately.

Based on these recommendations, Mr. Edwards received an administrative discharge on April 4, 1978. Edwards was then admitted to a VA hospital in July 1978. He was medicated and was subsequently discharged after he "remained dramatically improved and displayed no indication of his former psychosis."

Also in July 1978, Mr. Edwards filed for a disability rating for a nervous disorder. The Department of Veterans Affairs Regional Office ("RO") initially denied this request in July 1981. Mr. Edwards did not appeal and the decision became final.

Nearly a decade later, in August 1987, Mr. Edwards's treating social worker referred him to a VA Day Hospital where he was diagnosed with residual schizophrenia.

In November of that year, with the aid of a VA adjudication officer, Mr. Edwards sought to reopen his claim for service connection. Soon thereafter, the RO received Mr. Edwards's service-medical records. At that point, the RO reopened the claim and scheduled Mr. Edwards for a follow-up medical examination. The RO sent Mr. Edwards a notice that he would receive a physical examination and a second notice setting the actual date of the examination. Mr. Edwards, however, did not report for the examination. The RO denied Mr. Edwards's claim in March 1988. For a second time, Mr. Edwards did not appeal and the decision became final.

Still another decade later, in January 1997, Mr. Edwards filed another claim to reopen his claim for service connection. In a rating decision issued in March 1999, the RO granted service connection for Mr. Edwards's schizophrenic disorder concluding that Mr. Edwards had submitted new and material evidence in the form of testimony, clinical records, and a medical report from a VA examination conducted in January 1999 to warrant a service award. The decision assigned a 50% disability rating with an effective date in January 1997. Mr. Edwards appealed the effective date. The Board denied an effective date earlier than January 1997. Mr. Edwards then appealed to the Veterans Court who granted a joint motion to remand and vacated the Board's decision based on the Veterans Claims Assistance Act of 2000. Pub. L. No. 106-475, 114 Stat. 2096 (2000). On remand, the Board denied Mr. Edwards's claim. Mr. Edwards appealed. The Veterans Court again granted a joint motion to remand and vacated the

Board's decision because it had not adequately stated the reasons or basis for its decision.

On the second remand, Mr. Edwards argued for the first time that he had never received the notices sent by the RO in 1988 setting the date of his physical examination. The Board undertook an inquiry and learned that the address to which the notices were sent was accurate for Mr. Edwards. Further, the Board noted that the notices were not returned as undeliverable. Accordingly, the Board rejected Mr. Edwards's claim that he had not received notice.

On appeal to the Veterans Court, Mr. Edwards argued that the VA violated his constitutional due process rights by not providing him with adequate notice of the physical examination. More specifically, Mr. Edwards argued that due to his psychiatric disorder he was unable to comprehend the notices sent to him by the RO in 1988. He further asserted that the VA knew of his inability to receive notice. Accordingly, Mr. Edwards asserted that the RO was obligated to provide some type of notice tailored to his psychiatric disorder, such as providing him a designated guardian. Therefore, Mr. Edwards sought to toll his 1987 claim until the time he submitted his new evidence in 1997.

In January 2008, the Veterans Court affirmed the Board's decision finding that: (1) the RO had provided Mr. Edwards with adequate notice and the opportunity to present objections; (2) no tailored notice was required; and (3) the statutory deadlines applicable to determinations of effective dates for service disabilities are not subject to equitable tolling. Mr. Edwards timely appealed.

II.

As a threshold matter, this court must assess jurisdiction over this appeal. See Yarway Corp. v. Eur-Control USA, Inc., 775 F.2d 268, 273 (Fed. Cir. 1985) ("[T]his court must always consider its jurisdiction."). Our jurisdiction over decisions by the Veterans Court is governed by 38 U.S.C. § 7292 which states in relevant part:

> (d)(1) The Court of Appeals for the Federal Circuit shall decide all relevant questions of law, including interpreting constitutional and statutory provisions. The court shall hold unlawful and set aside any regulation or any interpretation thereof (other than a determination as to a factual matter) that was relied upon in the decision of the [Veterans Court] that the Court of Appeals for the Federal Circuit finds to be—
>
> > (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> > (B) contrary to constitutional right, power, privilege, or immunity;
> > (C) in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right; or
> > (D) without observance of procedure required by law.
>
> (2) Except to the extent that an appeal under this chapter presents a constitutional issue, the Court of Appeals may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case.

The Veterans Court specifically reviewed Mr. Edwards's allegations and found that Mr. Edwards "proffer[ed] little convincing evidence to support his contentions" and did not "point to any evidence in the record to suggest that VA was aware of any incompetence or inability to comprehend." Edwards, 22 Vet. App. at 35. Mr. Edwards asks this court to reexamine these factual findings in the face of the statutory prohibition against review of "a factual determination." Nonetheless, this case also "presents a constitutional issue" under the statutory-jurisdiction clause.

This court previously addressed the interplay of factual and constitutional issues in In re Bailey, 182 F.3d 860 (Fed. Cir. 1999). There, an attorney alleged that the

Veterans Court's decision to pursue disciplinary measures against him and the subsequent disciplinary proceedings violated his due process rights. In examining its jurisdiction under the statute, this court determined: "[s]ince the first issue Bailey raises 'presents a constitutional issue,' subsection 7292(d)(2), by negative implication, does authorize this court to review it as to factual matters." Id. at 868-70. Thus, because Mr. Edwards invokes due process, this court reviews the factual determinations but only to the extent necessary to ensure compliance with due process.

The Secretary suggests that Mr. Edwards waived his due process claim by failing to raise it in the lower-court proceedings. Under 38 U.S.C. § 7292(a), "any party . . . may obtain a review of the decision with respect to the validity of any statute or regulation . . . or any interpretation thereof . . . that was relied on by the [Veterans Court] in making its decision." (emphasis added). While Mr. Edwards did not assert a due process claim to the Board, he did raise it before the Veterans Court at a late stage of the proceeding. In supplemental briefing, Mr. Edwards asserted that due process guaranteed him some type of tailored notice or an evidentiary hearing concerning his mental incompetency. The Veterans Court expressly addressed and rejected this assertion:

> Essentially, his argument is that the RO was aware of his moderate to severe symptoms of schizophrenia near the time of the March 1988 notice and that the notice should have been tailored accordingly. . . . The appellant's principal due process argument contradicts this assertion: it assumes that he was able to comprehend the notice, and that the alleged defect rendered it ambiguous in that he understood it to allow for the submission of new evidence at any time. Hence, the Court finds that the evidence of record does not support the assertion that more tailored notice was required in the instant case.

<u>Edwards</u>, 22 Vet. App. at 35 (internal citations omitted). Because the Veterans Court addressed this point in reaching its decision, Mr. Edwards may "obtain a review" of that decision. <u>See, e.g.</u>, <u>Nolen v. Gober</u>, 222 F.3d 1356, 1359 (Fed. Cir. 2000) ("Although Mr. Nolen did not argue the issue of well groundedness before the Court of Appeals for Veterans Claims, that court raised the issue sua sponte . . . bringing it within our jurisdiction.").

III.

The Fifth Amendment guarantees that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests . . . . [The Supreme Court] consistently has held that some form of hearing is required before an individual is finally deprived of a property interest. . . . The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" <u>Mathews v. Eldridge</u>, 424 U.S. 319, 332-33 (1976) (quoting <u>Armstrong v. Manzo</u>, 380 U.S. 545, 552 (1965)) (internal citations omitted). Procedural due process thus determines both whether the litigant has a protected property interest and, if so, what process is due. <u>See</u> <u>Logan v. Zimmerman Brush Co.</u>, 455 U.S. 422, 428 (1982).

"Although the Supreme Court has declined to address whether due process applies to VA determinations of an applicant's eligibility for disability benefits, <u>see</u> <u>Walters v. National Ass'n of Radiation Survivors</u>, 473 U.S. 305, 312, 320 n.8 (1985), we have recently held that the Due Process Clause applies to such proceedings. <u>See</u> <u>Cushman v. Shinseki</u>, No. 2008-7129, 576 F.3d 1290, 2009 WL 2448505 (Fed. Cir.

Aug.12, 2009)." <u>Gambill v. Shinseki</u>, 576 F.3d 1307, 1310-11 (Fed. Cir. 2009). As such, this court next decides what process, if any, Mr. Edwards was due.

IV.

The requirements of procedural due process vary "depending upon the importance attached to the interest and the particular circumstances under which the deprivation may occur." <u>Walters</u>, 473 U.S. at 320. Mr. Edwards contends that due process requires the Secretary to "conduct a hearing to determine whether, and to what extent, a claimant is mentally disabled, to obtain an independent medical examination, or to appoint a guardian ad litem." In some circumstances, a mentally disabled applicant, known to be so disabled by VA, may receive additional protections while pursuing an application for benefits. This case does not, however, justify those extraordinary additional protections. <u>Cf.</u> <u>Cafeteria Restaurant Workers Union v. McElroy</u>, 367 U.S. 886, 894-95 (1961) (concluding that due process does not require a trial-type hearing in every case).

As noted earlier, Mr. Edwards first filed a claim for benefits in 1978. He declined to appeal the denial in 1981. A decade later, Mr. Edwards sought to reopen his claim. The RO reopened his claim and in 1988 scheduled a physical examination. The RO sent Mr. Edwards two notice letters, the second setting the actual date for a physical examination. Mr. Edwards did not report for the examination. When the RO denied his claim, Mr. Edwards again did not appeal. Another decade passed. Mr. Edwards once more sought to reopen his claim. This time, the RO granted service connection.

Under these facts, Mr. Edwards has not established a violation of his due process rights. Not once during the nearly thirty years his claim was pending in one

form or another with the RO did Mr. Edwards request a hearing to determine his competency. Nor did he ever contend to the RO that he had not received any notice or proper procedure over that time. Nor did he profess over that time any difficulty in understanding the notice or procedures offered to him. In fact, only at the latest stage of proceedings at the Veterans Court did Mr. Edwards for the first time assert a difficulty in understanding the notices sent to him by the RO.

This court sees no reversible error in the Veterans Court's conclusion that Edwards had not offered substantial evidence that he was incompetent during the 1988 time period, when the disputed notice was sent or thereafter, such that a hearing on his competency might be required. Mental illness and incompetency are not the same thing. See Barrett v. Principi, 363 F.3d 1316, 1321 (2004) ("We believe these generalized standards should govern claims of mental incompetence. . . . A medical diagnosis alone or vague assertions of mental problems will not suffice."). While Mr. Edwards's medical records established the existence of mental illness, at most they also established that Mr. Edwards was incompetent during a period in 1978, but noted that his situation had "dramatically improved" with medication. Mr. Edwards proffered no other evidence to the Veterans Court to establish his incompetency during any part of the ensuing thirty-year period. Under those circumstances, this court finds no reversible error in the Veterans Court's finding that he received proper notice and adequate procedural protection.

Thus, the record does not contain evidence showing that Mr. Edwards's condition rendered him unable to comprehend the notice letters or that the VA was aware of his inability to comprehend. Without notice of Mr. Edwards's inability to understand, the VA

would have had no reason to take the extraordinary course of undertaking proceedings to appoint a guardian or to schedule additional hearings. Without evidence of Mr. Edwards's alleged inability to understand a notice letter and without Mr. Edwards raising this question himself at all over a protracted time, this court perceives no reversible error in the Veterans Court's finding that he received adequate process. Therefore, this court affirms.

<u>AFFIRMED</u>

<u>COSTS</u>

Each party shall bear its own costs.

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

2008-7078

IRVIN J. EDWARDS,

Claimant-Appellant,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellee.

Appeal from the United States Court of Appeals for Veterans Claims in 04-1104, Judge Alan G. Lance, Sr.

RADER, Circuit Judge, additional views.

While I agree with the result reached in this case, I write separately to invite further inquiry about this court's recent decision in Cushman v. Shinseki, 576 F.3d 1290 (2009). In Cushman, this court determined that applicants for veteran's disability benefits have "property interest[s] protected by the Due Process Clause of the Fifth Amendment to the United States Constitution." Id. at 1298. Significantly, the Supreme Court has specifically declined to grant property right protections to mere applicants for government benefits. See Lyng v. Payne, 476 U.S. 926, 942 (1986) ("We have never held that applicants for benefits, as distinct from those already receiving them, have a legitimate claim of entitlement protected by the Due Process Clause of the Fifth or Fourteenth Amendment.").

Instead the Court advises:

To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a

unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it.  It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. . . .

Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972).  Applicants for government benefits may have a "need" or a "desire" to receive benefits, but before a showing of eligibility, they have no "legitimate claim of entitlement."  Indeed, the application and eligibility proceedings have the very purpose of determining which applicants have this "legitimate claim."  To grant property right protections to these eligibility proceedings places the cart squarely in front of the horse.  In fact, the Supreme Court stated directly that due process only protects property interests "that a person has already acquired in specific benefits."  Id. at 576 (emphasis added).  An applicant, by definition, has not yet acquired specific benefits.

In case a court may attempt to extend property protections to applicants, the Court states its point in even clearer terms:

Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law- rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

Roth, 408 U.S. at 577.  In other words, the Supreme Court ties due process protections to the kinds of property acknowledged by a prolonged course of common law recognized by the states.  In the past, this court has observed these qualifications and declined to extend due process protections to those with only unilateral expectations in potential benefits.  See Stearn v. Dep't of Navy, 280 F.3d 1376, 1384 (Fed. Cir. 2002) (finding that potential retirees have no protected property interest in future retirement

2008-7078                                    2

benefits). Nonetheless, in <u>Cushman</u>, this court stepped beyond the bounds set by the Supreme Court for property rights and due process protections.

This case serves to show the difficulties of extending due process to applicants. Mr. Edwards twice declined to appeal denials of benefits — once thirty years ago and again over twenty years ago. Thus, Mr. Edwards did not consider himself to have a vested property right. Moreover, his late assertion of a retroactive claim to entitlement makes it very difficult to characterize his "needs and desires" as property rights. Mr. Edwards's claim of property really reflects his own expectation or hope for benefits. At no point does Mr. Edwards allude to any traditional state law property interest underlying his claim. Instead, Mr. Edwards relies on the federal statutes permitting veterans to apply for benefits to support his "entitlement." Thus, Mr. Edwards's only "independent source" of property rights is a federal statute that gives benefits to applicants whose medical records show that injuries or conditions, among other requirements, are connected to military service. These federal statutes, however, do not create legitimate property, but only offer benefits for those who qualify.

Several of our sister circuits have treated social security payments as protected property interests. <u>See, e.g.</u>, <u>Stieberger v. Apfel</u>, 134 F.3d 37 (2nd Cir. 1997); <u>Parker v. Califano</u>, 644 F.2d 1199 (6th Cir. 1981); <u>Shrader v. Harris</u>, 631 F.2d 297 (4th Cir. 1980). This case law, however, does not confer property right status on applicants for veterans' benefits. Social security reimbursements — as earned payments — confer a right much closer to a "legitimate claim of entitlement" and beyond a "unilateral expectation." Social security reimbursement usually vests early in a worker's career. A worker has a legitimate expectation and reliance upon contributions to that program as entitlements

to retirement payments. Social security differs from programs like veterans benefits that specify tests for eligibility. Rather, social security claimants — unlike applicants for veterans' benefits — have paid into the retirement system with an expectation of recovery of investments. Cf. Flemming v. Nestor, 363 U.S. 603, 609-10 (1960) ("The Social Security system may be accurately described as a form of social insurance, enacted pursuant to Congress's power to 'spend money in aid of the 'general welfare,' whereby persons gainfully employed, and those who employ them, are taxed to permit the payment of benefits to the retired and disabled, and their dependents. Plainly the expectation is that many members of the present productive work force will in turn become beneficiaries rather than supporters of the program. . . . The 'right' to Social Security benefits is in one sense 'earned,' . . . .). Thus, the case law governing due process rights in social security matters does not confer property right status on applicants for veterans' benefits.

In sum, I perceive that this court has run before the Supreme Court sounded the starting gun on property rights for applicants. Before demonstrating an entitlement to benefits, a veteran must first prove an injury or condition sustained as a result of their service. Without such a showing, no "entitlement" arises. In my view, this hurdle to benefits defeats any claim to property protections during eligibility inquiries.