# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 10-1375

MICHAEL V. CLENNAN, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued November 13, 2012                    Decided January 24, 2013)

*Kenneth M. Carpenter,* of Topeka, Kansas, for the appellant.

*Timothy D. Sirhal,* with whom *Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Nisha C. Wagle*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief, for the appellee.

Before HAGEL, LANCE, and DAVIS, *Judges*.

HAGEL, *Judge*:  Michael V. Clennan appeals through counsel a January 4, 2010, Board of Veterans' Appeals (Board) decision in which the Board concluded that a September 1997 VA regional office determination that he is incompetent to handle the disbursement of funds was not nullified or negated by the subsequent payment of benefits directly to him under VA's supervised direct pay program.  Mr. Clennan's Notice of Appeal was timely and the Court has jurisdiction to review the Board decision pursuant to 38 U.S.C. § 7252(a).

This matter was referred to a panel of the Court to determine whether VA provided Mr. Clennan adequate procedural due process in June 2005 when it appointed a fiduciary to receive his VA disability compensation payments and authorized the fiduciary to charge a 4% fee payable out of his disability compensation.  Although neither party requested it, the Court held oral argument to assist in resolving the appeal and also ordered post-oral argument supplemental briefing.  Because the Court concludes that the Board properly interpreted the provisions of law relevant to this case

and provided adequate procedural due process, the Court will affirm the January 2010 Board decision.

## I. FACTS

Mr. Clennan served on active duty in the U.S. Navy from June 1972 to February 1973. In a September 1996 rating decision, the regional office awarded him non-service-connected pension benefits for schizophrenia in partial remission with encephalopathy secondary to birthing anoxia, anxiety neurosis, affect disorder, and an inadequate personality. The award of pension benefits was made effective May 17, 1996, and a letter sent to Mr. Clennan in October 1996 informed him that his monthly benefit payment would be $217.

In a May 1997 special outpatient report, a VA psychiatrist stated that Mr. Clennan had "been having difficulties in functioning" and had poor judgment, which the examiner explained were probably caused by his bipolar disorder and regular use of marijuana. Record (R.) at 2508. The psychologist opined that the "continued cannabis use [was] detrimental to [Mr. Clennan's] further progress and need[ed] to be stopped." *Id.* He suggested that Mr. Clennan was using his Social Security and VA pension benefits to purchase the marijuana and therefore proposed that he "have his competency removed for the use of his funds" and be assigned "a conservator of funds." *Id.*

In July 1997, the VA medical and regional office center sent Mr. Clennan a letter that, based on the May 1997 VA psychiatrist's report, proposed to find him incompetent to manage his pension benefit payments, which had recently been reduced to $155 per month. The letter informed Mr. Clennan that, if he was declared incompetent for VA purposes, "a fiduciary may be appointed to help [him] manage [his] VA benefits," in which case "[p]ayment of any money due [to him would] be made directly to [his] fiduciary."[1] R. at 2502. The letter also informed Mr. Clennan that he could request a hearing at which he could provide witness testimony and that he was entitled to representation by a veterans service organization representative or an attorney. The letter advised him that if he did not respond within 60 days, a decision would be made on the evidence already of

---

[1] "Federal fiduciary" is a term used by VA and defined as "a person or legal entity authorized by VA to serve as payee for the VA benefits of an incompetent beneficiary." *VA Adjudication Procedures Manual Rewrite* M21-1MR (M21-1MR), Pt. XI, Ch. 2, sec. E, topic 28(a).

record. The letter was accompanied by a proposed rating decision declaring Mr. Clennan incompetent to handle the disbursement of his VA benefit funds. R. at 2504.

The parties agree that Mr. Clennan did not respond to this letter and, in September 1997, the regional office issued a rating decision finding him incompetent to handle his VA benefit payments. That decision was accompanied by a letter informing Mr. Clennan that he had a right to appeal the decision, as well as by VA Form 4107, which described the appeal process. Although he was then represented by the same attorney who continues to represent him in this appeal to the Court, Mr. Clennan did not appeal the regional office's incompetency determination, and that decision therefore became final.

The letter sent to Mr. Clennan with the September 1997 regional office decision also stated that VA would find someone to manage his VA benefits for him. However, the parties agree that no fiduciary was appointed at that time, and a handwritten note on a February 1998 VA incompetency report indicates that Mr. Clennan was on "supervised direct pay." R. at 2490. Under the supervised direct pay program, disability benefit payments are made directly to the incompetent veteran, who is supervised through "periodic" field examinations conducted by VA field examiners.[2] M21-1MR, pt. XI, ch. 2, sec. E, topic 27(c). Mr. Clennan continued to receive supervised direct payment of his benefits until June 2005, as discussed further below.

In June 2003, the Board awarded Mr. Clennan VA benefits for a psychiatric disability, to include post-traumatic stress disorder. In August 2003, the regional office implemented that decision and assigned a 100% disability rating effective February 26, 1998. As a result, Mr. Clennan was entitled to a large–$128,189.59–retroactive award of benefits and a new monthly disability compensation benefit payment in excess of $2,000.

The record contains a partially completed September 1, 2003, VA Form 21-4716a, "Adult Beneficiary - Field Examination Request and Report," that lists Mr. Clennan as a supervised direct payment program participant for his disability compensation benefits. R. at 3115. Although this form is not signed, the parties do not dispute that a field examination was, in fact, initiated. The

---

[2] Field examiners are authorized to examine witnesses on matters within the jurisdiction of VA, take affidavits, administer oaths, and aid claimants in the preparation of claims. 38 C.F.R. § 13.2(a) (2012). VA conducts field examinations in matters involving the welfare of beneficiaries who are under legal disability or in need of supervision by the Veterans Service Center Manager. 38 C.F.R. § 13.2(b).

record also contains a March 19, 2004, report of contact that reflects that a VA field examiner spoke with Mr. Clennan's parents and his current counsel about the need to appoint a "payee" to manage his VA benefits, given the large retroactive award and substantial increase in his monthly payments. R. at 3114. The report of contact also indicates that the field examiner encouraged Mr. Clennan's parents to become his "conservator."[3] The field examiner also outlined the procedures the family could take if they wished to establish Mr. Clennan's competence to handle his VA funds. Finally, the field examiner noted that Mr. Clennan's parents appeared to be commingling their own funds with their son's disability compensation benefit payments in a single trust account and that VA objected to this because Mr. Clennan was participating in the supervised direct pay program.

Over a year later, in April 2005, the field examiner sent Mr. Clennan a letter stating: "Per our phone conversation of 4-22-2005[,] as well as before, I am required to verify the assets of the veteran who is currently on a SDP (supervised direct pay) status. Please furnish recent copies of financial institution statements so that I can verify all liquid assets of the veteran."[4] R. at 2868. This request triggered a flurry of correspondence between Mr. Clennan's current counsel and VA. Initially, in April 2005, Mr. Clennan's counsel sent the field examiner a letter contending that VA had no "statutory or regulatory authority" to place Mr. Clennan on "supervised direct pay" status and that the Clennans therefore would not comply with the accounting request. R. at 214. The letter further stated "VA considers [Mr.] Clennan [either] competent or incompetent to receive his VA benefits directly or via court[-]appointed fiduciary or a VA[-]appointed fiduciary" and that, by providing direct payments to Mr. Clennan for many years, VA made "a *de facto* determination that [he] is competent to receive direct payment of his VA benefits." R. at 214. Mr. Clennan's counsel further stated that if VA believed that Mr. Clennan was incompetent to directly receive his benefit payments, it should initiate new proceedings to make such a finding.

---

[3] It appears that, in this case, VA uses the terms fiduciary, payee, and conservator interchangeably to mean "some third party responsible for receiving and disbursing Mr. Clennan's disability compensation benefit payments." As noted in footnote 1 above, however, fiduciary has a specific legal meaning within VA, and such informality in language should be avoided.

[4] There is no evidence in the record of any prior requests for an accounting of the periodic payments or of the $128,189.59 retroactive payment that had been made directly to Mr. Clennan.

VA responded by letter dated May 12, 2005, stating that the regional office's September 1997 incompetency determination remained valid and that,

> [u]nder the authority given by Congress [pursuant to] 38 U.S.C. [§] 5502 and 38 C.F.R. § 13.56(a)[,] VA benefits payable to a veteran rated incompetent may be paid directly to the veteran in such amount as the Veterans Service Center Manager determines the veteran is able to manage with continuing supervision by the Veterans Service Center Manager, provided a fiduciary is not otherwise required.

R. at 210. The letter further stated that, "[w]hen VA benefits of a substantial nature are being paid to an incompetent beneficiary, VA must verify assets to assist in determining if a federal fiduciary or court-appointed fiduciary is needed. This would include the use of retroactive award funds." *Id.* Finally, the letter stated that VA preferred that a capable family member act as a fiduciary on Mr. Clennan's behalf, but that if there was no cooperation from his family, another person would be appointed. R. at 210-11. Later in May 2005, the regional office entered into an agreement with Thomas Shadoin, an attorney, to act as Mr. Clennan's fiduciary.

On June 23, 2005, Mr. Clennan's attorney filed a Notice of Disagreement with the May 2005 VA letter. In the Notice of Disagreement, he argued that "VA's decision to send directly to Mr. Clennan his VA benefits, as a matter of fact and law, **nullifies and negates** the VA's 1997 decision that Mr. Clennan was not competent to handle the disbursement of his VA benefits." R. at 205.

The following day, VA sent Mr. Clennan a letter notifying him that Mr. Shadoin had been appointed as his fiduciary and that Mr. Shadoin would be paid a commission out of Mr. Clennan's benefits for this service, not to exceed 4% of the annual amount paid. Several days later, on June 29, 2005, VA sent Mr. Clennan's counsel a letter in response to his June 23, 2005, Notice of Disagreement, explaining that it interpreted the Notice of Disagreement as "a request to have Mr. Clennan's rating changed to competent to handle his own VA affairs." R. at 189. VA therefore requested that Mr. Clennan submit evidence to show that he was, in fact, now competent to handle his own funds.

In August 2005, Mr. Clennan's attorney filed another Notice of Disagreement, again reiterating his theory that the September 1997 incompetency determination was "effectively and legally reversed" by the payment of VA benefits directly to Mr. Clennan, meaning that any

subsequent action that treated Mr. Clennan as incompetent constituted a new and appealable incompetency determination. R. at 183.

That same month, VA provided Mr. Clennan with a VA mental disorders examination. After a lengthy discussion of Mr. Clennan's symptoms and the manner in which they impaired his ability to function, the examiner stated:

> Regarding capacity to manage financial affairs, based on my examination I believe that the patient is not capable of managing his own financial affairs. He needs extensive help with managing money[,] which includes rent and utilities paid by his payee[ and an] inability to manage basic needs like buying groceries on his own. [He] continues to struggle with alcohol abuse and has very poor insight into [the e]ffect of alcohol on his psychiatric illness. He is currently functioning only very marginally with extensive support from family members and [his Continuous Supported Self-Care Program] caseworker.

R. at 165-66.

In September 2005, the regional office issued a Statement of the Case finding that the April 2005 letter sent to the VA field examiner by Mr. Clennan's counsel was the first indication that Mr. Clennan disagreed with the September 1997 regional office decision declaring him incompetent and that the incompetency determination had become final due to Mr. Clennan's failure to timely file a Notice of Disagreement within one year of that decision. Additionally, a September 2005 decision review officer decision reopened the September 1997 decision, but confirmed the incompetency determination on the basis of the VA examiner's August 2005 opinion.

In October 2005, Mr. Clennan's attorney submitted a Substantive Appeal from the September 2005 Statement of the Case, contending yet again that VA's continued direct payments to Mr. Clennan negated the September 1997 incompetency determination.

In September 2006, VA filed a petition in the Third Judicial District Court in Shawnee County, Kansas, seeking the appointment of Mr. Shadoin, Mr. Clennan's VA-appointed federal fiduciary, as curator to receive Mr. Clennan's VA disability benefits.[5] R. at 3047. Shortly thereafter, Mr. Clennan and his parents were served with a Notice of Hearing advising them of VA's petition and notifying them of the hearing date, October 4, 2006. That notice stated: "[I]f you fail to appear

---

[5] Under Kansas law, a curator is "any person acting as a fiduciary for a pensioner." KAN. STAT. ANN. § 73-501 (2012).

and voice concerns or objections, the matter will be addressed by the Court without further notice of the proceedings." R. at 3054. On October 4, 2006, the Third Judicial District Court issued an order noting that neither Mr. Clennan nor any representative had appeared,[6] granting VA's petition, and appointing Mr. Shadoin as Mr. Clennan's curator, an appointment he holds to this day. R. at 3056-58.

In November 2007, the Board issued a decision, finding that Mr. Clennan did not timely appeal the September 1997 regional office decision that found him incompetent and that it therefore became final. In March 2008, Mr. Clennan's counsel moved for reconsideration, arguing that the Board "failed to address the issue appealed by Mr. Clennan." R. at 58. This motion was denied in August 2008, but the Board nevertheless issued a supplemental decision in December 2008 that found that the regional office failed to address Mr. Clennan's argument that direct payment of benefits to him nullified or negated the September 1997 incompetency determination. The Board therefore remanded the matter to the regional office to provide a Statement of the Case on this issue.

In February 2009, the regional office issued the Statement of the Case, finding that, pursuant to 38 U.S.C. § 5502 and 38 C.F.R. § 13.56, VA is authorized to make payments directly to an incompetent beneficiary with VA supervision when it is determined that a fiduciary is not otherwise required. The regional office therefore concluded that continued direct payment of Mr. Clennan's benefits did not negate or nullify the September 1997 incompetency determination. Mr. Clennan appealed to the Board in April 2009, leading to the January 2010 decision now on appeal in which the Board concluded that section 5502 and § 13.56 "establish[] that the [regional office] has the authority to make benefit payments directly to a [v]eteran rated incompetent" and that Mr. Clennan's argument was therefore without merit. R. at 10.

---

[6] At oral argument, Mr. Clennan's current counsel, who has also represented him before VA since at least 1997, informed the Court that Mr. Clennan never notified him of the Kansas state proceedings and that he was not involved in those proceedings in any capacity.

## II. ANALYSIS

On appeal, Mr. Clennan makes two arguments, one related to statutory and regulatory interpretation, the other founded upon the Due Process Clause of the Fifth Amendment of the U.S. Constitution.  The Court will address each argument in turn.

### A.  Interpretation of Relevant Provisions of Law

First, Mr. Clennan continues to rely on a variant of the argument he presented to VA regarding the continuing validity of the regional office's September 1997 decision that found him incompetent for purposes of managing his VA benefits.  This argument is premised on his interpretation of section 5502 and § 13.56(a) and presents a question of law that this Court reviews de novo.  38 U.S.C. § 7261(a)(1); *see Smith v. Gober*, 14 Vet.App. 227, 230 (2000).

Chapter 55 of title 38, U.S. Code, governs payments to and supervision of fiduciaries for minors, incompetents, and other wards who are VA beneficiaries.  Section 5502(a)(1) provides, in pertinent part:

> Where it appears to the Secretary that the interest of the beneficiary would be served thereby, payment of benefits under any law administered by the Secretary may be made directly to the beneficiary or to a relative or some other fiduciary for the use and benefit of the beneficiary, regardless of any legal disability on the part of the beneficiary.

38 U.S.C. § 5502(a).  Thus, this provision expressly authorizes the Secretary to pay benefits "directly to the beneficiary" or to certain third parties when the beneficiary has been deemed incompetent, if the Secretary determines that doing so is in the best interest of the beneficiary.

Pursuant to this authority, VA has promulgated various regulations to address issues related to disbursing VA benefits to incompetent veterans.  As a threshold matter, VA defines a "mentally incompetent person" as "one who[,] because of injury or disease[,] lacks the mental capacity to contract or to manage his or her own affairs, including disbursement of funds without limitation." 38 C.F.R. § 3.353(a) (2012).  When a VA rating agency determines that a veteran is incompetent, the Veterans Service Center Manager is charged with selecting "the person or legal entity best suited to receive Department of Veterans Affairs benefits in a fiduciary capacity" for that veteran. 38 C.F.R. § 13.55(a) (2012).  Further, VA has provided a list of authorized payees in these instances,

8

including, and consistent with section 5502(a), the beneficiary himself and "[t]he beneficiary under supervision (supervised direct payment)." 38 C.F.R. § 13.55(b)(1), (2).

Section 13.56 governs instances in which the Veterans Service Center Manager determines that direct payment to the incompetent beneficiary is in the best interest of the beneficiary. In particular, subsection (a) controls instances in which the direct pay beneficiary is the veteran. It provides:

> Department of Veterans Affairs benefits payable to a veteran rated incompetent may be paid directly to the veteran in such amount as the Veterans Service Center Manager determines the veteran is able to manage with continuing supervision by the Veterans Service Center Manager, provided a fiduciary is not otherwise required. If it is determined that an amount less than the full entitlement is to be paid, such payment shall be for a limited period of time, generally 6 months, but in no event to exceed 1 year, after which full payment will be made and any funds withheld as a result of this section will be released to the veteran, if not otherwise payable to a fiduciary.

38 C.F.R. § 13.56(a).

Mr. Clennan's first argument focuses on the interplay between this regulation, particularly the second sentence, and section 5502. Mr. Clennan does not argue that this provision is in any way invalid. Instead, he contends that, under a correct interpretation of section 5502 and § 13.56(a), VA may not directly pay an incompetent veteran benefits to which he is entitled for more than one year without appointing a fiduciary. He contends that this is precisely what happened in this case and that the September 1997 incompetency determination was therefore "negated" or "nullified" by operation of law. However, his analysis is seriously flawed in several respects.

First, it appears that Mr. Clennan contends that, pursuant to the second sentence of § 13.56(a), when VA does not appoint a fiduciary to act as a payee for an incompetent veteran within one year of an incompetency determination, the veteran's benefits necessarily are "not otherwise payable to a fiduciary" at the end of this one-year period and VA must therefore pay future disbursements directly to the veteran. He seems to argue that, when this occurs, VA has effectively determined that the veteran *is* competent to manage his VA benefits and, further, that if VA wants to continue supervised direct payment after one year, it must make a new incompetency determination. *See* Appellant's Brief (Br.) at 10.

9

However, the plain and unambiguous language of the second sentence of § 13.56(a) indicates that it only applies "[i]f it is determined that an amount less than the full entitlement is to be paid" directly to the incompetent beneficiary. 38 C.F.R. § 13.56(a); *see Jones v. Brown*, 41 F.3d 634, 638 (Fed. Cir. 1994) (quoting *Ardestani v. INS*, 502 U.S. 129, 136 (1991) and explaining that, "[i]n determining the plain meaning of statutory language, 'legislative purpose is expressed by the ordinary meaning of the words used'"). Here, as the record indicates–and as Mr. Clennan freely admits, both in his briefs and at oral argument–Mr. Clennan continued to receive the *full amount* of benefits to which he was owed for more than seven years after the September 1997 incompetency determination, up until a fiduciary was appointed for him in May 2005. *See* Appellant's Br. at 9 ("In this case[,] it was never determined by the VA that 'an amount less than the full entitlement is to be paid.'" (quoting 38 C.F.R. § 13.56(a)). Accordingly, the second sentence of § 13.56(a) is simply inoperable in this case.

Further, even if the second sentence *were* somehow applicable to the facts of this case, it in no way suggests that a previous incompetency determination is negated or nullified where the veteran-beneficiary is placed on supervised direct pay and a fiduciary is not appointed within one year. Rather, it permits the Veterans Service Center Manager to withhold a portion of the benefits otherwise payable to the incompetent veteran for a limited period of time, not to exceed one year, after which time the balance of the benefits must be paid to the veteran if they are not otherwise payable to a fiduciary.[7] Accordingly, the provision allows the Veterans Service Center Manager to "test," in a supervised setting, an incompetent veteran's ability to responsibly manage a portion of his benefits, while at the same time safeguarding the unpaid balance of the benefits. Indeed, this is precisely how VA has interpreted this portion of § 13.56(a) in its *Adjudication Procedures Manual* (M21-1MR), which states that: (1) supervised direct pay "may be used as a temporary method for a trial period to provide the beneficiary an opportunity to demonstrate his/her capacity, or lack of capacity, to handle benefits payable;" (2) "[d]uring this trial period, an amount sufficient to provide the beneficiary with an opportunity to demonstrate an ability to handle funds is released directly;"

_____

[7] For example, if, during the period of supervised direct payment of less than the full amount of benefits, a fiduciary was appointed to receive the veteran's benefits going forward, the withheld funds would be paid to the fiduciary, not the veteran, at the end of the limited period of time.

10

(3) "[a]t the end of the trial period, the fund usage is reviewed and re-evaluated for the purpose of determining whether all benefits should be released directly to the beneficiary, *either with or without future supervision*, or to a fiduciary;" and (4) when supervised direct pay is used "for a trial period[, it] is *not* intended as a long-term payment arrangement."[8]  M21-1MR, pt. XI, ch. 2, sec. E, topic 27(a) (first emphasis added).  However, nothing in § 13.56(a) or the M21-1MR suggests that, if, at the end of the maximum one-year trial period, VA continues to believe that the appointment of a fiduciary is not in the veteran's best interest, it has effectively determined that the veteran is no longer incompetent for VA purposes.

Instead, VA has promulgated a regulation that details the circumstances under which the regional office must consider whether a veteran previously adjudged incompetent should be rated competent.  Specifically, after a veteran is deemed incompetent, the Veterans Service Center Manager is required to, among other things, "develop information as to the beneficiary's social, economic and industrial adjustment; . . . select a method of disbursing payment as provided in § 13.56 . . .; and authorize disbursement of the benefit."  38 C.F.R. § 3.353(b)(2).

> If in the course of fulfilling the[se] responsibilities . . . the Veterans Service Center Manager develops evidence indicating that the beneficiary may be capable of administering the funds payable without limitation, he or she will refer that evidence to the rating agency with a statement as to his or her findings.  The rating agency will consider this evidence, together with all other evidence of record, to determine whether its prior determination of incompetency should remain in effect.

38 C.F.R. § 3.53(b)(3).  Further, a medical reexamination of the veteran's condition may be requested to assist in this determination.  *Id.*

Of course, there is nothing to prohibit a veteran who has been deemed incompetent from submitting evidence of his competency and requesting that the earlier incompetency determination be revisited.  Indeed, in the present case, the record indicates that the regional office interpreted various documents submitted by Mr. Clennan's counsel as just such a request, provided him a new VA mental disorders examination to determine whether he remained incompetent for purposes of managing his benefits, and, in September 2005, reopened its September 1997 decision finding him

---

[8] It has not escaped the Court's notice that, by VA's own admission, supervised direct pay is recommended for no longer than 36 months (3 years).  *See* M21-1MR, pt. XI, ch. 2, sec. E, topic 27(e).  The Secretary would do well to investigate why Mr. Clennan received benefits under the supervised direct pay program for more than seven years.

incompetent. Ultimately, however, the regional office concluded that the new evidence continued to indicate that Mr. Clennan remained incompetent to manage his own funds.

Mr. Clennan asserts that his interpretation of § 13.56(a) is supported by section 5502 because "[t]he statute provides for payment 'directly to the beneficiary or to a relative or some other fiduciary for the use and benefit of the beneficiary.'" Appellant's Br. at 9 (quoting 38 U.S.C. § 5502(a)(1)). Although not entirely clear, it appears that Mr. Clennan argues that this provision indicates that payment to a relative or fiduciary is indicative of VA's determination that the veteran is *incompetent* to manage his benefit payments, while payment directly to the beneficiary is indicative of VA's determination that the veteran is *competent* to manage his benefit payments.

This argument, however, ignores that the title of chapter 55, within which section 5502 is codified, indicates that it applies to "[m]inors, [i]ncompetents, and [o]ther [w]ards." Thus, section 5502 necessarily applies to situations in which the beneficiary is a minor, incompetent, or some other type of ward. *See Florida Dept. of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47 (2008) (quoting *Porter v. Nussle*, 534 U.S. 516, 528 (2002) to explain that "statutory titles and section headings 'are tools available for the resolution of a doubt about the meaning of a statute'" and holding that the placement of a particular statutory provision within a subchapter that contained a heading that limited the scope of the subchapter also limited the scope of the specific statutory provision). In other words, the portion of section 5502(a)(1) upon which Mr. Clennan focuses actually provides that VA may continue to make payments to an incompetent beneficiary when it determines that "the interest of the beneficiary would be served" by such direct payments, not that such payments suggest that the beneficiary is competent. 38 U.S.C. § 5502(a)(1).

In light of this discussion, the Court concludes that Mr. Clennan's arguments that rely upon his interpretation of section 5502 and § 13.56(a) are without merit.

### B. Due Process

Mr. Clennan's second argument is premised on the Fifth Amendment's Due Process Clause. He asserts that, "[a]t no time, until VA's notice on June 24, 2005, . . . advising [him] that an attorney, Thomas Shadoin, had been appointed as the payee or fiduciary for the receipt of his VA benefits, had [he] received notice that his property rights in his VA benefits would be impaired." Appellant's Br. at 11. He contends that he "had a constitutional right to prior notice and an opportunity to be heard

12

before . . . VA discontinued its direct payment . . . of his VA benefits." *Id.* In other words, Mr. Clennan argues that VA did not provide him with sufficient procedural due process prior to appointing Mr. Shadoin as his fiduciary and authorizing the payment of 4% of his yearly disability compensation benefits to Mr. Shadoin as a fiduciary fee.

*1. Process Already Provided*

At the outset, the Court notes that Mr. Clennan's argument proceeds from an incorrect factual premise. Although he asserts that VA did not provide any notice prior to June 2005 that his property rights in his VA benefits could be constrained, the record indicates that he was, in fact, provided a great deal of earlier process. First and foremost, in July 1997, he was provided notice of VA's intent to declare him incompetent for purposes of handling his benefit payments based on the findings of the VA psychiatrist in May 1997. This notice expressly informed him of the consequences that could flow from a finding that he was incompetent to manage his funds, including that "a fiduciary may be appointed to help . . . manage [his] VA benefits," in which case "[p]ayment of any money due [to him would] be made directly to [his] fiduciary." R. at 2502. The letter further informed Mr. Clennan that he was entitled to contest the proposed incompetency decision and that, upon request within 60 days, he would be provided a hearing at which he would be entitled to representation by an attorney and an opportunity to present testimony. Mr. Clennan, who–again–was represented by his current counsel, opted not to contest VA's proposed finding.

Further, when Mr. Clennan did not contest the proposed rating decision or request a hearing, VA issued a rating decision declaring him incompetent and notified him of his right to appeal that decision. The notice that accompanied this decision also informed him that a fiduciary would be appointed to help him manage future benefit payments, although the parties agree that this did not happen until many years later. Importantly, Mr. Clennan chose not to avail himself of the appeal process, despite having the assistance of his current counsel. The decision finding him incompetent therefore became final.

Finally, in May 2005, in response to correspondence sent by Mr. Clennan's counsel contesting VA's authority to demand an accounting of assets, the regional office informed Mr. Clennan that an accounting was necessary to determine whether the appointment of a fiduciary was necessary. This

13

letter further stated that VA preferred that a family member act as a fiduciary, but that if none were willing, it would be forced to appoint someone else.

Given this backdrop, the Court interprets Mr. Clennan's argument as one that due process required that VA provide him *additional* notice and an opportunity to be heard once VA determined that a fiduciary was, in fact, necessary, and to provide that notice *prior* to the official appointment of the fiduciary and discontinuation of direct payments. Although Mr. Clennan did not specifically raise this argument below, the Court holds that it has jurisdiction to consider it under the larger umbrella of whether VA generally provided adequate process concerning Mr. Clennan's incompetency determination and payment method. *See Robinson v. Peake*, 21 Vet.App. 545, 551 (2008) (holding that the Court's jurisdiction flows from the Board's decision on a particular claim, not on a particular argument or theory offered in support of that claim), *aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009).

### 2. Procedural Due Process

#### a. Property Interest

"To raise a due process question, the claimant must demonstrate a property interest entitled to such protections." *Cushman v. Shinseki*, 576 F.3d 1290, 1296 (Fed. Cir. 2009). In this regard, it is now well established that a veteran's "entitlement to [VA] benefits is a property interest protected by the Due Process Clause of the Fifth Amendment to the United States Constitution." *Id.* at 1298. Accordingly, the Court "next decides what process, if any, . . . was due" to Mr. Clennan. *Edwards v. Shinseki*, 582 F.3d 1351, 1355 (Fed. Cir. 2009).

#### b. Requirements

"The requirements of procedural due process vary 'depending upon the importance attached to the interest and the particular circumstances under which the deprivation may occur.'" *Id.* (quoting *Walters v. National Ass'n of Radiation Survivors*, 473 U.S. 305, 320 (1985)). As outlined above, Mr. Clennan argues that due process requires that VA notify a veteran of its intent to discontinue direct supervised payment of the benefits to which he is entitled prior to the time when it appoints a fiduciary or other payee and begins making payment to the third-party payee. He also contends that due process requires VA to provide "a fair opportunity to be heard on the question of the VA's discontinuation of . . . direct receipt of . . . VA benefits." Appellant's Br. at 12.

14

The U.S. Supreme Court has explained that, when there is a question as to precisely how much process is owed an individual in connection with the government's interference with a property interest, three factors must be considered:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

### i. Private Interest Affected

In addressing each of these factors in this case, the analysis contained in *McGrath v. Weinberger*, 541 F.2d 249 (10th Cir. 1976), is informative. In *McGrath*, the appellant, a recipient of Social Security benefits, relied on the Fifth Amendment's Due Process Clause to challenge the procedures formerly used by the Social Security Administration to appoint a representative payee when the agency determined that the beneficiary was no longer competent to manage his or her benefit payments. *Id.* at 250. It was undisputed "that at no time was [the appellant] given notice of or an opportunity for a hearing prior to the determination that he was incapable of managing his benefit payments." *Id.* at 251. Like Mr. Clennan here, the appellant in *McGrath* argued "that the Due Process Clause demands that prior notice and an opportunity for a hearing be afforded Social Security beneficiaries who are determined to be incapable of managing their benefits." *Id.* at 253.

In addressing this argument, the U.S. Court of Appeals for the Tenth Circuit (Tenth Circuit) followed the analysis outlined by the Supreme Court in *Eldridge*. First, it characterized the private interest affected by the Social Security Administration's actions as "the free use of Social Security benefits" and concluded that "a deprivation of free use of benefits" is not as severe as the temporary deprivation of benefits that was at issue in *Eldridge*, where the Supreme Court ultimately concluded that a pre-deprivation hearing was not necessary prior to termination of the benefits. *Id.* The Tenth Circuit therefore concluded that "it would be an unwarranted departure . . . to hold that due process requires prior notice and an opportunity for a hearing where there has been no termination of benefits." *Id.*

15

As in *McGrath*, the primary private interest here is Mr. Clennan's continued "free use" of the disability compensation benefits that he was due. Unlike in *McGrath*, VA provided Mr. Clennan with notice and an opportunity to be heard prior to its incompetency determination. VA further provided him advance notice of the ramifications of its proposed incompetency determination–namely, that a third-party payee might be appointed to manage his benefits for him. Simply put, the procedures followed by VA in this case were more extensive than those that were found to weigh against a finding of a due process violation in *McGrath*.

It is true that Mr. Clennan also has a property interest in the benefits he has lost as a result of the commission paid to the appointed fiduciary. *See Freeman v. Shinseki*, 24 Vet.App. 404, 417 n.9 (2011) ("[A] property right of the veteran is clearly potentially affected by any payment from his benefits to a fiduciary."). However, although VA is authorized to pay a commission to an appointed fiduciary where there is not someone who is capable and willing to undertake the task for free, it is not permitted to do so until incompetency proceedings have been completed. Thus, prior to any taking of the portion of the veteran's disability compensation benefits that is commissioned to the appointed fiduciary, the veteran is entitled to a full array of procedural safeguards, including notice and an evidentiary hearing. Further, any such commission is capped by statute at 4% of the veteran's annual benefits, *see* 38 U.S.C. § 5502(a)(2), a figure sufficiently small to lead the Court to conclude that, at least in Mr. Clennan's case, his private interest in these withheld funds is not so great that additional process is necessary, as a loss of this amount is not likely to deprive him of the means by which to live. *See Eldridge*, 424 U.S. at 340 (explaining that, in *Goldberg v. Kelly*, 397 U.S. 254 (1970), the Supreme Court determined that an evidentiary hearing was necessary in advance of the deprivation of a government entitlement benefits because "welfare assistance is given to persons on the very margin of subsistence"). Indeed, at no time has Mr. Clennan asserted that the payment of slightly more than $1,000 of his disability compensation benefits to Mr. Shadoin each year[9] has placed him in anything approaching dire financial straits.

---

[9] The record does not reveal the current monthly amount of Mr. Clennan's VA compensation benefit payment. The most recent figure in the record is $2,193.00, as of December 1, 2002. R. at 386. Using that figure, 4% of the benefits paid in a 12-month period is $1,052.64.

In reaching this conclusion, the Court notes that the record of proceedings in this case indicates that VA attempted to avoid the appointment of a paid federal fiduciary for Mr. Clennan by (1) placing him on supervised direct pay for a long period of time, and (2) informing him and his counsel that it preferred to appoint a capable family member to act as his fiduciary, *see* R. at 210-11, and encouraging his parents to act as his "conservator," *see* R. at 3114. However, the record further indicates that, under advice of counsel, (1) Mr. Clennan and his family refused to provide an accounting of past benefit payments (which precipitated, in part, the termination of Mr. Clennan's participation in the supervised direct pay program) and (2) Mr. Clennan's parents repeatedly declined to serve as Mr. Clennan's fiduciary, citing their fragile relationship with their son.

*ii. Risk of Erroneous Deprivation*

With regard to the second factor outlined by the Supreme Court in *Mathews*, in *McGrath*, the Tenth Circuit concluded that "the risk of an erroneous deprivation of the beneficiary's interest in the free use of his benefits appear[ed] to be relatively slight" because the agency's incompetency determination was "based primarily on evaluations by psychologists and staff members who . . . observed the beneficiary" and, "[i]n the event . . . that one ha[d] been wrongly denied the free use of his benefits[,] the procedures available for reviewing such a decision appear[ed] . . . to be fair and adequate." *McGrath*, 541 F.2d at 253-54.

In this case, the risk to Mr. Clennan also appears to be slight because VA has promulgated regulations that safeguard against an erroneous finding of incompetency. These regulations mandate that, "[u]nless the medical evidence is clear, convincing[,] and leaves no doubt as to the person's incompetency," VA may not make a finding of incompetency "without a definite expression regarding the question by the responsible medical authorities." 38 C.F.R. § 3.353(c). Further, "[w]here reasonable doubt arises regarding a beneficiary's mental capacity to contract or manage his or her own affairs," there is a regulatory presumption in favor of competency. 38 C.F.R. § 3.353(d). Moreover, not only is a beneficiary who is deemed incompetent entitled to all of the appellate procedure associated with other regional office decisions, as noted above, he is also entitled to a pre-deprivation hearing if he so requests.

Additionally, even after the beneficiary is found to be incompetent, as discussed in part II.A. above, VA has empowered the Veterans Service Center Manager, in appropriate circumstances, to

17

test an incompetent veteran-beneficiary's ability to manage his own funds by placing him on supervised direct pay, as was done in Mr. Clennan's case. This system provides an additional layer of protection against the erroneous deprivation of the veteran's control over his disability compensation benefit payments and the consequent loss of up to 4% of those benefits as a commission to any fiduciary that is appointed.

Finally, an incompetent beneficiary who believes that VA did not follow all applicable procedures in selecting a fiduciary may appeal this determination to the Board and then to the Court. *See Freeman*, 24 Vet.App. at 417.[10] Collectively, these procedures suggest that no additional process is necessary to safeguard against the risk of the erroneous deprivation of a beneficiary's control over his benefits.

### iii. Government Interest

Finally, with regard to the third consideration the Supreme Court identified in *Mathews*, the Tenth Circuit in *McGrath* concluded that the government had a substantial interest in not being required to provide a pre-deprivation hearing because, if it were required to do so, the government would be placed in the untenable position of deciding whether to pay benefits to a beneficiary who appeared to be incompetent or stop payment of all benefits until such a hearing could be provided. *McGrath*, 541 F.2d at 254.

Here, of course, VA's procedures provide advance notice and an opportunity to be heard to a beneficiary whom it proposes to declare incompetent. VA is a heavily burdened agency with a large backlog of claims. *See generally* Gregg Zoroya, *Backlog Buries Veterans' Claims*, USA Today (April 7, 2011, 12:19 AM), http://www.usatoday.com/news/military/2011-04-07-1Abacklog07_ ST_N.htm (last visited Jan. 22, 2013). It would therefore be a substantial burden to also require VA to provide a *second* notice and an additional opportunity for a hearing before it takes the additional

---

[10] Prior to *Freeman*, VA's position was that fiduciary appointments were not appealable decisions. That *Freeman*–which held for the first time that fiduciary appointments *are* appealable–was decided several years after Mr. Clennan was informed that Mr. Shadoin had been appointed as his fiduciary is inapposite. Mr. Clennan was represented by current counsel at the time of the June 2005 notice that Mr. Shadoin had been appointed, and he was free to challenge VA's position on the appealability of that determination. The Court notes, however, that the VA *Adjudication Procedure Manual* still states that the appointment of a fiduciary is final and unappealable. *See* M21-1MR, pt. XI, ch. 2, sec. E, topic 26(b) ("The designation and removal of a fiduciary are responsibilities resting solely within [VA]. These actions are *not* subject to appeal."). This is no longer a correct statement of the law, and the Secretary would do well to amend the M21-1MR to reflect the current reality.

step of appointing a fiduciary or other third party as payee. Further, to do so would be to place VA in the absurd position of continuing direct payment of benefits to a beneficiary who, after substantial procedural meanderings, has been found to be incapable of responsibly managing his or her own funds.

In sum, the Court concludes that the procedure provided by VA prior to the deprivation of Mr. Clennan's right to directly control his benefits was sufficient.

## C. Impact of State Court Proceedings

As a final matter, even if the Court were to conclude that a second round of notice, along with a new opportunity to be heard, was required prior to the appointment of Mr. Shadoin in this case, we conclude that any error on the part of VA in that respect is nonprejudicial for the period after October 2006 because Mr. Clennan received notice and an opportunity to be heard in the Kansas curatorship proceedings and opted not to contest the appointment of Mr. Shadoin as his curator to receive and disburse his VA disability compensation benefit payments. *See Conway v. Principi*, 353 F.3d 1369, 1374 (Fed. Cir. 2004); *see also* 38 U.S.C. § 7261(b)(2) (requiring the Court to "take due account of the rule of prejudicial error").

Although, in response to the Court's post-oral argument briefing order, Mr. Clennan asserts that the Kansas process of appointing Mr. Shadoin curator was somehow tainted or inadequate, that is a matter arising under the laws of the state of Kansas, not laws administered by VA or affecting the payment of VA benefits. Accordingly, those arguments are not properly before this Court. Moreover, that Mr. Clennan's current counsel–who was also his representative in 2006–now objects to the procedure undertaken in the Kansas proceedings strikes the Court as opportunistic, given that he raises the purported inadequacies of the Kansas proceedings only in response to the Court's post-oral argument briefing order. He did not raise the issues in the briefs he filed with the Court (to be sure, neither party discussed the Kansas proceedings in its briefs or otherwise brought them to the Court's attention until oral argument), nor did he raise them when specifically questioned about the Kansas proceedings at oral argument. It is also clear that he has not attempted, in the more than six years since the appointment of Mr. Shadoin as curator, to challenge the alleged deficiencies in the Third Judicial District Court in Kansas. Therefore, the Court finds, because there is no evidence to the contrary, that the Kansas proceedings unfolded in the proper manner.

As discussed in Part I, above, in October 2006, the Third Judicial District Court in Shawnee County, Kansas, granted VA's petition to have Mr. Shadoin appointed as Mr. Clennan's curator. There is no dispute that Mr. Clennan received notice of the petition and that the notice advised him of the date of the hearing and informed him that he could appear to contest the appointment. There is also no dispute that he did not do so.

That Mr. Clennan did not inform his current counsel of that notice and that he was not represented in the Kansas proceedings is of no moment. Mr. Clennan has only been adjudged incompetent to handle his funds; he has not been adjudged incompetent generally. Despite his best efforts, counsel for Mr. Clennan cannot have it both ways: Mr. Clennan cannot be *both* competent to handle his VA funds without the need for a VA-appointed fiduciary *and* so incompetent that he was incapable of understanding the September 2006 notice or participating in the October 2006 Kansas proceedings without the assistance of counsel. Mr. Clennan was served with notice of the hearing and commanded to appear. He was advised that if he failed to appear, the case would proceed without him "without further notice of the proceedings." R. at 3054. Again, the Court finds, because there is no evidence to the contrary, that Mr. Clennan understood the notice he received and chose not to exercise the rights afforded to him.

### III. CONCLUSION

Upon consideration of the foregoing, the January 4, 2010, Board decision is AFFIRMED.

20